**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

Robert L. Stephenson,                                  *

              Plaintiff                          *

              v.                                      *          Case No. 25-cv-01030-AAQ

Wells Fargo Bank, N.A.,                                *

              Defendant                          *

## **MEMORANDUM OPINION**

Pending before the Court are Defendant Wells Fargo's Motion to Dismiss Plaintiff Robert Stephenson's Amended Complaint, ECF No. 33, and Plaintiff's Motion to Strike Defendant's Motion to Dismiss, ECF No. 35, among other motions.  Plaintiff Stephenson is proceeding *pro se*; accordingly, the Court will construe his pleadings liberally.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), *cert. denied*, 439 U.S. 970 (1978).  On September 2, 2025, the Court held a hearing on Plaintiff's request for injunctive relief, after which the Court issued a Memorandum Opinion and Order explaining that *res judicata* likely barred Plaintiff's claims.  ECF No. 30.  In his Amended Complaint, Plaintiff attempts to circumvent this issue by including allegations which he says post-date the sale of his home.  Most of these claims have been raised before and rejected. As Plaintiff correctly concedes, "Plaintiff's filings arise from a single, longstanding dispute concerning the accuracy of the loan balance and the accounting of payments made over the life of the loan." ECF No. 56, at 1.  The Court agrees.  For these reasons and the reasons discussed below, Defendant's Motion to Dismiss shall be granted, and Plaintiff's Motion to Strike shall be denied.

1

**BACKGROUND**

This case generally concerns Plaintiff's allegations that Defendant Wells Fargo failed to follow proper procedures in handling his mortgage. Although Plaintiff alleges a wide variety of violations, his case generally alleges that Defendant unlawfully foreclosed on Plaintiff's home and that Plaintiff suffered various harms as a result. *See* ECF No. 28, at 3–11. The foreclosure has been the subject of extensive state court litigation. *See* ECF No. 26-1. Altogether, the parties have been litigating the foreclosure of Mr. Stephenson's home for approximately ten years. *Id.*

In 2016, Plaintiff challenged the Substitute Trustees', and in turn, the Defendant's, failure to provide monthly statements and information regarding the amounts he owed under the loan. ECF No. 33-2, at 3; *see also* ECF No. 39-3, at 3 ("In July 2016, Substitute Trustees acting on behalf of Wells Fargo filed an Order to Docket foreclosure against Plaintiff's property in the Circuit Court for Montgomery County, Maryland."). Upon the state court's rejection of this argument, Plaintiff filed a Motion for Reconsideration wherein he argued that Defendant failed to provide him all documents related to the loan. ECF No. 33-3, at 2. The Motion was unsuccessful. *See* ECF No. 33-4, at 4 (noting Plaintiff's appeal of denial of Motion for Reconsideration).

In 2017, Plaintiff initiated multiple proceedings in federal Bankruptcy Court against the present Defendant. *See* ECF Nos. 33-5 and 33-6. In his complaint in one of those cases, Plaintiff argued that: 1) Defendant failed to provide Plaintiff Notice of the Right to Cancel, ECF No. 33-5 at 5; 2) Defendant illegally filed false credit reports, which prevented Plaintiff from obtaining any loans, *id.*; 3) Defendant failed to respond to multiple requests for information about the loan, *id.* at 7; 4) Defendant's representative falsified their true relationship to the creditor, *id.*; and 5) Defendant failed to provide Plaintiff the original contract that he signed, *id.* at 7. As relief, Plaintiff sought a stay of the foreclosure auction ordered at the end of the previous litigation. *Id.* at 8. In

June 2017, the Bankruptcy Court lifted the stay and allowed the auction to proceed. *Stephenson v. Wells Fargo*, No. 17-135, ECF No. 16, at 1 (Bankr. D. Md. June 29, 2017).

At approximately the same time that Plaintiff filed the previously discussed complaint in Bankruptcy Court, Plaintiff filed a Motion in the Circuit Court for Montgomery County, seeking to forestall an auction of his property which was then set for March 6, 2017. ECF No. 33-7. Therein, Plaintiff argued that the Trustees had filed false information about him with credit reporting agencies and submitted falsified documentation to the Circuit Court. *Id.* at 12. The Circuit Court rejected Plaintiff's arguments but granted a stay of the auction pending appeal so long as Plaintiff posted a bond and made payments on the loan. *Stephenson v. Devan*, No. 2218, 2018 WL 2215442, at *4 (Md. Ct. Spec. App. May 15, 2018).

In June 2018, the Maryland Court of Special Appeals affirmed the Circuit Court's decision. *See id.* at *11. The Court rejected Plaintiff's arguments that Defendant had failed to provide monthly statements pursuant to the loan and Defendant had failed to provide a complete payment history regarding the loan in response to Plaintiff's requests. *Id.* at *3, *11.

Over the next six years, Plaintiff filed a series of bankruptcy petitions, motions, and appeals again seeking to forestall the sale of the property. Therein, he raised many of the same arguments that he had previously raised and which he raises in this case. *See* ECF No. 33-8 (alleging that Wells Fargo illegally filed false credit reports regarding Plaintiff, filed documents with falsified information, failed to respond to Plaintiff's requests for payment history regarding his loan, and failed to provide information regarding loan modification options). In September 2024, Plaintiff filed in state Circuit Court a Joint Motion to Dismiss and Concurrent Opposition to all of Wells Fargo's filings. ECF No. 33-10. Upon its denial, he sought reconsideration of the Motion. ECF No. 33-11. Therein, Plaintiff raised many of the arguments that he raises in the present case. He

argued among other things that: 1) Defendant violated an automatic stay that began once he initiated bankruptcy proceedings, *id.* at 5; 2) Defendant refused to provide information regarding the amount he has paid towards the loan, *id.* at 18, and the remaining balance, *id.* at 20; and 3) Defendant engaged in fraud by making false statements to Plaintiff and the state court, *id.* at 30. When the Motion was denied, Plaintiff sought review in the Appellate Court of Maryland. *Stephenson v. Savage*, No. 2200, 2025 WL 3122877, at *1 (Md. App. Ct. Nov. 7, 2025).  He argued to that court, as he does here, that Defendant failed to provide him the payment history related to the loan, among other documents; made false statements to the Court which it erroneously accepted; illegally committed financial fraud; and violated his rights under the Fair Credit Reporting Act, and the Truth in Lending Act.  ECF No. 33-13, at 3, 6, 11, and 12. The Court of Special Appeals affirmed the Circuit Court's denial of Plaintiff's reconsideration Motion. *Stephenson v. Savage*, 2025 WL 3122877, at *2.

On July 10, 2024, the property was sold at foreclosure auction.  *Id.* at *1.  On October 11, 2024, over Plaintiff's objection, the Montgomery County Circuit Court ratified the sale.  *Id.* However, as before, this was not the end of the matter.  On November 7, 2024, Plaintiff filed a "Motion for Post-sale Exception to the Foreclosure Sale, Opposition/Reconsideration of Ratification of Sale and for a Stay of Action Pending Appeal."  ECF No. 33-11.  The Circuit Court denied Plaintiff's Motion on December 16, 2024.  *Stephenson v. Savage*, 2025 WL 3122877, at *1. On November 7, 2025, the Appellate Court of Maryland rejected his appeal of the Circuit Court's denial of the Motion.  *Id.* at *2.  On December 23, 2025, the Maryland Supreme Court denied Plaintiff's Petition for Writ of Certiorari to review the decision.  *Stephenson v. Savage*, 348 A.3d 895 (Md. 2025).  Plaintiff presently maintains a separate appeal which is also before the Appellate Court of Maryland.  *See Stephenson v. Savage*, Case No. ACM-REG-0143-2026 (Md. App. Ct.).

Meanwhile, Plaintiff also initiated litigation in this Court asserting claims similar to those he advanced in state court.  On March 28, 2025, he filed his first Complaint alleging, among other things, that Defendant failed to provide a complete payment history and violated an automatic stay. ECF No. 1, at 2–3.

On June 25, 2025, the Circuit Court for Montgomery County issued a judgment awarding possession of the property to the purchaser of Mr. Stephenson's home.  ECF No. 26-3, at 10.  On July 9, 2025, Mr. Stephenson sought emergency relief in state court seeking to stay the judgement, which the state court denied.  ECF No. 26-1, at 17.  On August 11, 2025, the Montgomery County Sherriff's Office enforced the judgment, removing Mr. Stephenson's personal possessions from the property in dispute.  *See* ECF No. 26-3, at 2.

On August 8, 2025, this case was referred to the undersigned for all further proceedings. ECF No. 16.  On August 15, 2025, Plaintiff filed his first Motion for an Expedited Hearing and Emergency Relief in the present case. ECF No. 19.  Plaintiff conceded at the hearing on his Motion that the precise arguments he raises in his present federal case have been raised in state court, considered there, and rejected.  ECF No. 27.  The Court ultimately denied Plaintiff's request for preliminary relief because Plaintiff had not demonstrated that: 1) he was likely to succeed on the merits of his claim; and 2) that he would suffer irreparable harm if the Court did not grant the request.  ECF No. 30, at 5–9.  Separate and apart from Plaintiff's request for a preliminary injunction, the Court granted Plaintiff a three-week extension to file his Amended Complaint because his foreclosure constituted sufficient cause and the lack of prejudice to Defendant from a three-week extension.  *Id.* at 10.

On September 9, 2025, Plaintiff filed an Amended Complaint, again alleging that Defendant's foreclosure of his home was unlawful because of Defendant's wrongful lending and

servicing practices related to the loan he took when he purchased his home.  ECF No. 28, at 3–4. The majority of the Amended Complaint, like its predecessor, repeats facts that have been the subject of other filings and rulings in state court for over a decade.  Specifically, Plaintiff alleges, among other things, that: 1) Defendant's failure to respond to his written requests to correct servicing errors violated the Real Estate Settlement Procedures Act, *id.* at 7; 2) Defendant's failure to provide accurate finance charges and payment schedules violated the Truth in Lending Act, *id.*; 3) Defendant used false and deceptive means of collecting any debts he owed in violation of the Fair Debt Collection Practices Act, *id.* at 8; 4) Defendant provided inaccurate information to consumer reporting agencies in violation of the Fair Credit Reporting Act, *id.*; 5) Defendant unlawfully sought to foreclose on his home, even though he had filed for bankruptcy, and thus the foreclosure proceedings should allegedly have been stayed, *id.* at 8–9; 6) Defendant fraudulently provided false information to the U.S. Consumer Financial Protection Bureau and the state court resulting in an unlawful foreclosure decision, *id.* at 9–10; and 7) Defendant failed to service Plaintiff's home mortgage loan with reasonable care, *id.* at 11.

A limited number of the allegations in the Complaint concern more recent happenings. First, Plaintiff alleges that between February and March of 2025, Defendant provided false information to the Maryland Office of the Attorney General and the U.S. Consumer Financial Protection Bureau.  *Id.* at 9–10.  Second, Plaintiff includes allegations regarding the impact of his eviction on him and his family.  *See id.* at 4–7 ("Plaintiff has suffered financial damages, lost of economic investment opportunities, lost of all business and tax records going back five years, lost of all family and historic records dating back fifty years and keep sake, Loss of all of Wife's and Plaintiff's family history together and separately . . . ").  Finally, Plaintiff alleges that, as a result of Defendant's provision of false information to consumer reporting agencies, he has continued to

suffer financial harm, including most recently the denial of a credit card application in September 2025. *Id.* at 8. Plaintiff attached to his Amended Complaint, a "Memorandum of Law in Support of Amended Complaint." *Id.* at 11–15. Therein, Plaintiff abandoned his argument that res judicata did not apply on account of fraud but instead argued that the doctrine did not apply because Plaintiff's complaint sought relief for violations that occurred after or were independent of the state court proceedings. *Id.* Plaintiff did not highlight which of his claims, or which parts, he believed this argument applied to.

On September 23, 2025, Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint, arguing that res judicata, the *Rooker-Feldman* doctrine, and *Younger* abstention barred Plaintiff's claims. ECF No. 33, at 15–22. Alternatively, Defendant argued that Plaintiff had failed to state a viable claim. *Id.* at 23. On October 7, 2025, Plaintiff filed a Motion to Strike Defendant's Motion to Dismiss, arguing that Defendant did not properly serve him, and, as a result, he had not had an adequate opportunity to respond to Defendant's Motion. ECF No. 35-1, at 3.

On November 3, 2025, Plaintiff filed his formal Opposition to Defendant's Motion to Dismiss. ECF No. 37. Therein, Plaintiff reiterated his argument that res judicata did not apply because: "[e]ven assuming foreclosure ratification is a final judgment as to the right to foreclose, it does not automatically preclude later claims for distinct federal statutory violations, arising from separate conduct, different time periods or different primary rights (e.g. unlawful servicing responses, credit reporting after 2024, CFPB responses in 2025, or stay violations))." *Id.* at 15; *see also id.* at 16 ("Plaintiff's 2023-25 servicing, reporting and bankruptcy stay claims involve different times, different duties, and harms; res judicata therefore does not apply."). Additionally, Plaintiff argued that the portion of his fraud claim alleging false reporting of information to the

7

state court in the state court proceedings could not have been raised earlier because he was unaware of them before July 2025.  *Id.* at 16.

On November 20, 2025, and February 2, 2026, Plaintiff sought leave to file Supplements to his Amended Complaint, including additional allegations supporting his claim that Defendant presented false information to the state court.  ECF Nos. 39 and 44.  Although the amendments provided additional information allegedly supporting the claim, the amendments did not alter the scope of the claim.  In his November 20, 2025, filing, Plaintiff additionally resurrected his argument that his claims should not be subject to res judicata because of newly discovered evidence that Defendant presented false information to previous courts adjudicating his claims. *See, e.g.*, ECF No. 39, at 2 (alleging that Plaintiff has uncovered "documents and communications . . . showing that Wells Fargo provided a false payment history").

### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b) provides that a party may move to dismiss where the Plaintiff has "fail[ed] to state a claim upon which relief can be granted."  When ruling on a motion to dismiss, the court considers whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court will consider whether the plaintiff has pled factual content allowing reasonable inferences to be drawn that the defendant is "liable for the misconduct alleged."  *Id.*  The plaintiff need not plead facts that are probable but must present facts showcasing more than a "sheer possibility" that the conduct perpetuated by a defendant is unlawful.  *Id.*  The plaintiff has an obligation to provide more than "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.

Pleadings that present "no more than conclusions" will not be "entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court may not consider extrinsic evidence unless the motion to dismiss is converted into one for summary judgment. Fed. R. Civ. P. 12(d).   The court should not make such a conversion where the parties are not given notice and are not afforded the opportunity to conduct reasonable discovery. *Carter v. Baltimore County*, 39 F. App'x 930, 932–33 (4th Cir. 2002).  There are a few limited exceptions to this rule—extrinsic evidence may be considered where documents attached to a motion to dismiss are integral to the complaint. *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).  However, the authenticity of such documents must not be in dispute. *Id.*  The court may also take judicial notice of certain facts outside of the complaint, but only if they can be "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

## ANALYSIS

### I.      Plaintiff's Motion to Strike Shall Be Denied.

Although Plaintiff moved to strike Defendant's Motion to Dismiss on account of improper service, he has since received the Motion and had adequate time to not only respond once, but on three separate occasions.  *See* ECF Nos. 37, 39, 44.  Accordingly, any prejudice has been significantly reduced, if not eliminated.

Federal Rule of Civil Procedure 12(f) governs Motions to Strike. The Rule provides that "[t]he court may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act . . . (1) on its own; or (2) on motion made by a party . . ." Fed. R. Civ. P. 12(f) (emphasis added).  "Pleadings", as referenced in Rule 12(f), are

those listed in Rule 7(a).  *See, e.g.*, *CX Reinsurance Co. v. Johnson*, 325 F.R.D. 132, 135 (D. Md. 2018); *Sewell v. Westat, Inc.*, No. TJS-20-1895, 2021 WL 5233753, at *7 (D. Md. Nov. 10, 2021); *Kelly v. FedEx Ground Package Sys., Inc.*, No. 3:10-cv-01265, 2011 WL 1584764, at *2 (S.D. W. Va. Apr. 26, 2011) ("A majority of District Courts agree that the "pleadings" envisioned by the framers of Rule 12(f) are those set forth in Rule 7(a) and are not intended to include [other documents].").  Rule 7(a) defines "pleadings" as: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer."  Fed. R. Civ. P. 7(a).  While "some cases have held that Rule 12(f) may be used to strike documents other than pleadings, the weight of recent authority is that such an action is not contemplated or permitted by the rules."  *Anusie-Howard v. Todd*, 920 F. Supp. 2d 623, 627 (D. Md. 2013), aff'd, 615 F. App'x 119 (4th Cir. 2015).  Aside from the authority to strike pleadings under the Federal Rules of Civil Procedure, the "Court of Appeals for the Fourth Circuit has recognized that district courts have [the] inherent power to strike other types of documents for just cause . . . . " *Gaskins v. Balt. City Pub. Schs.*, No. JKB-15-2961, 2016 WL 192535, at *3 (D. Md. Jan. 15, 2016) (quoting *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 556 F.3d 138, 149–50 (4th Cir. 2009)).  When district courts exercise inherent powers, such as the power to strike, they must do so "with restraint and discretion."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).   Generally, Motions to Strike are "viewed with disfavor" because they are "drastic remed[ies]" and "often . . .  a dilatory tactic."  *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (quoting 5A Wright & Miller's Federal Practice & Procedure § 1360, 647 (2d ed. 1990)).

Given that: 1) the document Plaintiff seeks to strike is not a pleading; 2) Plaintiff's multiple separate oppositions to the document he seeks to strike; and 3) the Court did not rule on Defendant's Motion to Dismiss until Plaintiff had significant time to respond to it, this is not the rare instance in which striking a Motion is appropriate.

## II.    Res Judicata Bars Most of Plaintiff's Claims

In Maryland, res judicata bars re-litigation of a claim if (1) the parties are the same as in the earlier dispute; (2) the claim in the current litigation is the same as that which was previously raised, or substantially similar such that it should have been raised in the earlier case; and (3) there is a final judgment on the merits. *Anne Arundel Cnty Bd. of Educ. v. Norville*, 887 A.2d 1029, 1037 (Md. 2005).

Res judicata bars most Plaintiff's claims. As highlighted, Plaintiff has repeatedly raised and courts have repeatedly rejected his claims that Defendant illegally serviced Plaintiff's mortgage loan. To the extent that Plaintiff alleges new events, most are on-going harms of claims that Plaintiff has previously alleged or are substantially similar to his previous claims, and thus, res judicata bars them, as well. Finally, Plaintiff's allegations of extrinsic fraud fail for the reasons addressed in the Court's Memorandum Opinion and Order denying Plaintiff's request for preliminary relief.[1]

---

[1] Plaintiff highlights that Defendant relies on various documents outside of the pleadings, and thus argues, Defendant's Motion is akin to a motion for summary judgment. ECF No. 37, at 29-30. The Court has limited its reliance to only: 1) the rulings of other courts, as their accuracy can not be reasonably questioned; and 2) Plaintiff's own filings in other courts for the fact that Plaintiff made the specific arguments therein. The Court may properly take judicial notice of such information without converting the present Motion. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (stating that a court may take judicial notice of matters of public record); *Muhammad v. IFWE, Inc.*, No. TDC-17-2767, 2018 WL 11462364, at *1 n. 1 (D. Md. Jan. 4, 2018) ("The Court takes judicial notice of the filings and rulings in the Criminal Case."). Plaintiff has included many of these filings as attachments at various points throughout the case. *See, e.g.,* ECF

### A. Plaintiff Concedes that Res Judicata Bars Most of His Claims.

As noted, Plaintiff has conceded that the majority of his Amended Complaint concerns factual occurrences that he previously challenged in litigation involving himself and Defendant and that multiple courts have rejected.[2]

This concession accords with a review of the record. Construed liberally, Plaintiff's arguments in the present case generally fall into five categories: 1) Defendant's alleged failure to provide certain information regarding his loan in response to his requests, 2) Defendant's alleged filing of false documents with the state court and other governmental entities; 3) Defendant's reporting of Plaintiff to various consumer reporting agencies; 4) Defendant's violation of the stay that was imposed when he filed his bankruptcy petition; and 5) Defendant's use of false and deceptive means to collect on the underlying loan. Plaintiff has raised each of these arguments to multiple state courts on multiple occasions. *See, e.g.*, ECF No. 33-2, at 3 (arguing that Defendant failed to provide monthly statements and information regarding the amounts he owed under the loan); ECF No. 33-3, at 2 (arguing that Defendant failed to provide all documents regarding the loan); ECF No. 33-7, at 12 (arguing that Defendant provided false information to consumer reporting agencies and submitted false documentation to the Circuit Court); ECF No. 33-11, at 5,

---

No. 37-17 (attaching plaintiff's "motion for flagrant and intentional violation of the automatic stay" from federal bankruptcy court).

[2] For the purposes of Defendant's Motion to Dismiss, the Court considers Plaintiff's most recent proposed amendments. *See* ECF Nos. 39, 44. The Court shall ultimately deny Plaintiff's Motions for Leave to Amend, for as stated herein, the amendments do not change the ultimate result and thus are futile. *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) ("We have interpreted Rule 15(a) to provide that leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." (internal citations and quotation marks omitted)). Likewise, the Court has considered the supplemental state court orders Plaintiff has highlighted even though they do not alter the ultimate outcome of this case. *See, e.g.,* ECF Nos. 47, 52, 53.

18, 20, 30 (arguing that Defendant violated an automatic stay that began once he initiated bankruptcy proceedings, refused to provide information regarding the amount Plaintiff paid towards the loan and the remaining balance, and engaged in fraud by making false statements to Plaintiff and the state court). The Circuit Court for Montgomery County has repeatedly rejected Plaintiff's arguments seeking to forestall the foreclosure of the property, as well as Plaintiff's Motions for Reconsideration. *Stephenson v. Devan*, 2018 WL 2215442, at *1–4; *Stephenson v. Savage*, 2025 WL 3122877, at *1. The Maryland Appellate Court has twice rejected Plaintiff's appeals.[3] *Stephenson v. Devan*, 2018 WL 221544, at *11; *Stephenson v. Savage*, 2025 WL 3122877, at *2.

While most of the cases involved Substitute Trustees, as opposed to Wells Fargo, Defendant is in privity of interest with them, as they brought the underlying state actions on Wells Fargo's behalf. *See also Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 683 (D. Md. 2018) (quoting *Jones v. HSBC Bank USA, N.A.*, 444 F. App'x 640, 644 (4th Cir. 2011)) ("[W]hen a substitute trustee 'prosecute[s] [a] state court foreclosure action on behalf of [a mortgage servicer], which in turn serviced the underlying mortgage on behalf of [the lender],' the servicer, lender and substitute trustee share 'the same right to foreclose on the [subject] mortgage,' such that 'the privity component of claim preclusion is satisfied.'"); *Anyanwutaku v. Fleet Mortg. Grp., Inc.*, 85 F. Supp.

---

[3] In one of his Motions for Leave to File a Supplemental Pleading, Plaintiff argues that the 2025 Maryland Appellate Court decision does not constitute a final judgment on the merits because Plaintiff had failed to notice his appeal of the original Motion in a timely manner. ECF No. 39, at 6. However, Plaintiff overlooks that the Court determined it had jurisdiction to review Plaintiff's Motion for Reconsideration in which he raised the same arguments. *Stephenson v. Savage*, 2025 WL 3122877, at *1 ("Stephenson did, however, file his notice of appeal within 30 days of the circuit court's denial of his revisory motion. True, this is an appealable order."). Regardless, as discussed, Plaintiff has presented his arguments on numerous occasions and courts have rejected them, including in the Circuit Court judgment which the Appellate Court determined it did not have jurisdiction to review.

2d 566, 571 (D. Md. 2000) (concluding that trustees were in privity with mortgage and note holders).

Accordingly, res judicata bars most of Plaintiff's claims, even considering Plaintiff's proposed amendments.

### B. Res Judicata Bars Most of Plaintiff's New Claims.

Plaintiff's more recent allegations—though he describes them as new and distinct—also seek to rehash claims that state courts have already considered and rejected.  Construing the Amended Complaint liberally, the Court has reviewed not only those claims and factual allegations that Plaintiff has identified, but any that appear on the face of the Amended Complaint.

As noted, Plaintiff has already argued and courts have rejected Plaintiff's claims that Defendant unlawfully serviced Plaintiff's loan, that the foreclosure sale violated an automatic stay that was allegedly in place, and that Defendant provided false information to consumer reporting agencies.  Plaintiff unsuccessfully raised such arguments in his efforts to prevent ratification of the sale of his former property as recently as 2024.  That Plaintiff allegedly may continue to suffer on-going harm—in the form of on-going credit denials, eviction from his home, and continuing lack of documents which he alleges Defendant should have provided—as a result of claims he previously raised and courts rejected does not provide a basis to revisit the claims.  *See Riger v. Hometown Mortg., LLC*, No. 3:14–cv–00462–LRH–VPC, 2015 WL 1823514, at *3 (D. Nev. Jan. 14, 2015) (quoting *N. Cal. River Watch v. Humboldt Petroleum, Inc.*, 162 F. App'x 760, 762–63 (9th Cir. 2006)) ("'[R]es judicata does not preclude additional litigation if some new wrong occurs,' though '[s]imply identifying continuing harm from the same conduct is insufficient to overcome res judicata.'").  Likewise, that Plaintiff now seeks relief using different legal theories which he did not previously raise does not exempt the claims from res judicata given that they

14

arise from the same common nucleus of facts.  *See Johnson v. Balt. Police Dep't*, 608 F. Supp. 3d 227, 246 (D. Md. 2022) ("Newly articulated claims based on the same [transactional] nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action.").  Plaintiff's response that he could not have known of his claim alleging false reporting of information to the state court is undercut by his repeated attempts to raise the issue over the last decade, including most recently to the Appellate Court of Maryland in 2024.  *See, e.g.*, ECF No. 33-13, at 6.  Construing the Amended Complaint liberally, only one of Plaintiff's claims appears to allege a claim arising out of a new wrong: Defendant's alleged provision of false information to the Maryland Attorney General's Office and the U.S. Consumer Financial Protection Bureau in February and March of 2025.

### C.  Plaintiff's Allegations of Fraud Concern Intrinsic, Not Extrinsic Fraud.

As explained in the Court's decision denying Plaintiff's request for preliminary relief, Plaintiff does not allege extrinsic fraud which would exempt his previously decided claims from res judicata.  ECF No. 30, at 5–7.  After the Motion to Dismiss was fully briefed, Plaintiff filed a Motion for Leave to File a Supplemental Pleading.  ECF No. 39.  Therein, he argues that he has uncovered evidence of extrinsic fraud.  *Id.* at 2.  However, the examples he provides—providing false information to the Court—are, as explained in the Court's ruling on Plaintiff's request for preliminary relief, not extrinsic fraud.  *See* ECF No. 30, at 7 (holding that "Plaintiff's arguments that Defendant presented evidence to the state court which Plaintiff alleges is not true clearly allege intrinsic fraud.").

### III.  Plaintiff Has Not Adequately Plead His Claim that Defendant Provided False Information to the Maryland Attorney General's Office and the U.S. Consumer Financial Protection Bureau.

In Plaintiff's sole remaining claim, Plaintiff alleges that Defendant provided false information to the U.S. Consumer Financial Protection Bureau and the Maryland Attorney General's Office in violation of the False Claims Act.[4]  ECF No. 28, at 10.  Plaintiff alleges:

> Defendant filed intentionally with the CFPB and Maryland Attorney General Office of Consumer Affairs false and fraudulent documents in February and March 2025 that shows reported payment history which they knew was wrong.  The Defendant knew since 2014 that they needed to do a forensic audit and they did nothing.  The Defendants were given six months in 2019 by the bankruptcy court to do their forensic audit to correct the records and they did nothing about it.  But in October 2019 turned around and confiscated the Plaintiff's funds in the Defendant's Bank in violation of the Automatic Stay.

*Id.*

"The False Claims Act imposes civil liability on any person who 'knowingly presents, or causes to be presented, to [the United States government] a false or fraudulent claim for payment or approval' or 'knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government.'" *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting 31 U.S.C. § 3729(a)).  Because Plaintiff alleges fraud, pursuant to Federal Rule of Civil Procedure 9(b), Plaintiff must plead the claim with particularity.

Plaintiff has failed to allege any facts that the U.S. Government has paid, approved a claim or received a false or fraudulent claim for payment or approval arising out of the facts in this case.  Accordingly, this claim is subject to dismissal, as well.  Given that Plaintiff has had, at a minimum, three opportunities to plead his claim, ECF Nos. 1, 4, 28; many of these opportunities came after

---

[4] Plaintiff also alleges that these same statements violated an automatic stay in place from 2019 and 2022.  ECF No. 28, at 10.  However, as discussed above, res judicata bars this claim.

16

Plaintiff was aware of Defendant's Motion to Dismiss; the claim remains deficient; and there are no facts in the Complaint that suggest the U.S. government received a claim for payment or approval related to this case, Plaintiff's FCA claim, likewise, shall be dismissed with prejudice. *See Harris v. Britto*, No. PJM 17-2885, 2018 WL 2045532, at *4 (D. Md. May 2, 2018) (dismissing claim with prejudice where plaintiff did not "plead[] with particularity any facts regarding these two Defendants that would meet the higher pleading standards for claims of common law fraud.").

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss is, hereby, granted and Plaintiff's Motion to Strike is, hereby, denied.  Since Defendant filed its Motion to Dismiss, Plaintiff has filed a series of Motions seeking discovery and asking the Court to conduct evidentiary hearings regarding the allegations in the case.  *See* ECF Nos. 48, 49, 50, 51, 57. Because Plaintiff's claims are either barred by res judicata or not properly pled, these Motions are denied.

A separate implementing Order shall follow.

Date: July 10, 2026

_____/s/_____
Ajmel A. Quereshi
U.S. Magistrate Judge
